BMR:TJS
F.#2005R00060

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★  JUN 2 3 2005  ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

VINCENT BASCIANO,
    also known as "Vinny
    Gorgeous" and "Vinny
    from the Bronx,"
DOMINICK CICALE,
ANTHONY AIELLO,
    also known as "Ace," and
THOMAS J. LEE,
    also known as "Tommy Lee,"

           Defendants.

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 05 Cr. 0060 (S-2)(NGG)
(T. 18, U.S.C., §§
924(c)(1)(A)(iii), 1503,
1959(a)(1), 1959(a)(5),
1962(c), 1962(d), 1963, 2 and
3551 et seq.)

- - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

INTRODUCTION TO ALL COUNTS

      At all times relevant to this superseding indictment, unless otherwise indicated:

The Enterprise

      1.  The members and associates of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family"), also known as the Massino family, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The Bonanno family engaged in, and its activities affected, interstate and foreign commerce.  The Bonanno family was an organized criminal

group that operated in the Eastern District of New York, other parts of the United States and Canada.

2. The Bonanno family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Bonanno family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Bonanno family.

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4. Above the captains were the three highest-ranking members of the Bonanno family. The head of the Bonanno family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Bonanno family and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Bonanno family, including murder.

5.  The boss, underboss and consigliere of the Bonanno family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Bonanno family.  In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew.  When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Bonnano family was often appointed to that position in an acting capacity.

6.  The Bonanno family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families."  The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.  For a period of time, the boss of the Bonanno family was removed from membership within the commission.

7.  From time to time, the Bonanno family would propose a list of associates to be "made," that is, to become

3

members of the Bonanno family. The list would be circulated to the other families based in New York City.

### The Purposes, Methods and Means of the Enterprise

8. The Bonanno family constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The principal purpose of the Bonanno family was to generate money for its members and associates. This purpose was implemented by members and associates of the Bonanno family through various criminal activities, including arson, credit card fraud, drug trafficking, extortion, kidnaping, illegal gambling, interstate transportation of stolen goods, loansharking, and robbery. The members and associates of the Bonanno family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Bonanno family was to generate money for its members and associates, the members and associates at times used the resources of the Bonanno family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Bonanno family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

4

10.  The members and associates of the Bonanno family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.  Members and associates of the Bonanno family often coordinated street-level criminal activity, such as drug trafficking, illegal gambling, loansharking, extortion, and robbery, with members and associates of other organized crime families.

### The Defendants

12.  At various times, the defendant VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," was an acting boss, a captain, a soldier and an associate within the Bonanno family.  The defendant VINCENT BASCIANO became the acting boss of the Bonanno family following the January 20, 2004 arrest and incarceration of Bonanno family acting boss Anthony Urso, who became the Bonanno family acting boss following the January 9, 2003 arrest and incarceration of Bonnano family official boss Joseph Massino.

13. At various times, the defendant DOMINICK CICALE was a captain, acting captain, soldier and associate within the Bonanno family.

14. At various times, the defendant ANTHONY AIELLO, also known as "Ace," was a soldier and associate within the Bonanno family.

15. At various times, the defendant THOMAS J. LEE, also known as "Tommy Lee," was an associate of the Bonanno family and a criminal defense attorney who represented several members and associates of New York city-based organized crime families, including members and associates of the Bonanno family.

VINCENT BASCIANO's Post-Arrest
Participation in the Affairs of the Bonanno Family

16. On or about November 19, 2004, the defendant VINCENT BASCIANO was arrested based on a separate indictment and incarcerated at the Metropolitan Detention Center in Brooklyn, New York ("MDC").

17. Following his November 19, 2004 incarceration, the defendant VINCENT BASCIANO used a relative on his visiting list and the defendant THOMAS J. LEE to send messages from prison to members and associates of the Bonanno family regarding the maintenance and ongoing operation of the Bonanno family. Prior to his November 19, 2004 incarceration, BASCIANO used LEE and a private investigator to send messages regarding the maintenance and ongoing operation of the Bonnano family to the official boss

6

of the Bonnano family, Joseph Massino, who was incarcerated at the MDC.

18. On or about November 23, 2004, the defendant BASCIANO saw Joseph Massino, the official boss of the Bonanno family, at the federal district courthouse in Brooklyn, New York. At that time, BASCIANO proposed the murder of a federal law enforcement official involved in investigating and prosecuting members and associates of the Bonanno family, including BASCIANO.

19. On or about December 3, 2004, the defendant VINCENT BASCIANO met Massino at the MDC. BASCIANO discussed, among other things, the murder of Randolph Pizzolo, also known as "Randy." BASCIANO reported that certain members and associates of the Bonanno family, acting at his direction, had murdered Pizzolo.

20. Pizzolo's body was found on December 1, 2004 in the Greenpoint section of Brooklyn, New York. Pizzolo's body had multiple gun shot wounds. Pizzolo was an associate of the Bonanno family.

21. Following the December 3, 2004 encounter with the defendant VINCENT BASCIANO, Massino reported to federal law enforcement officials the substance of BASCIANO's comments regarding the proposed murder of a federal law enforcement official and the murder of Pizzolo.

7

22. On January 3, 2005 and January 7, 2005, the defendant VINCENT BASCIANO met with Massino at the MDC. Prior to those meetings, Massino gave his consent to federal law enforcement officials to record these conversations, and the conversations between BASCIANO and Massino on January 3 and 7, 2005 were recorded.

23. During the two January 2005 meetings, the defendant VINCENT BASCIANO and Massino spoke about, among other things, the threat on the federal law enforcement official, the murder of Pizzolo and the ongoing and future operation of the Bonanno family.

24. During the January 3, 2005 conversation, the defendant VINCENT BASCIANO explained his justification for ordering the murder of Pizzolo. In response to the question "Why didn't you just chase him?", BASCIANO stated: "You want to know why? Because he is a f-----g dangerous kid that don't f-----g listen." Later in the conversation, BASCIANO further discussed the murder of Pizzolo: "I thought this kid would have been a good wake-up call for everybody."

Attorney THOMAS J. LEE's Participation
In the Criminal Affairs of the Bonanno Family

25. The defendant THOMAS J. LEE willingly used his status as an attorney to act, over a period of months, as a conduit of criminal messages between BASCIANO and the incarcerated official boss of the Bonanno family. LEE delivered

8

messages inside the MDC to Massino regarding not only the structure and ongoing operation of the Bonanno family but also regarding specific Bonanno family criminal activities.

26.  The defendant THOMAS J. LEE also brought the incarcerated official boss a request from BASCIANO for permission to kill Patrick DeFilippo, a captain in the Bonanno family. Speaking of this request in the January 3, 2005 recording, the official boss stated: "Then he [LEE] says to me, eh, eh, if Patty [DeFilippo] gets out, Vinnie wants to jocko 'em. So, I look at 'em." BASCIANO replied: "Yes, that I did say that. I did say that." Massino did not authorize the murder. Prior to Massino's incarceration, Massino and BASCIANO agreed that the word "jocko" used in connection with an individual would indicate BASCIANO's request for permission to kill that individual.

## COUNT ONE
(Racketeering)

27.  The allegations contained in paragraphs 1 through 26 are realleged and incorporated as if fully set forth in this paragraph.

28.  In or about and between January 2003 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," and THOMAS J. LEE, also known as "Tommy Lee," together with others, being persons employed by and associated with the

Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.

RACKETEERING ACT ONE
(Murder/Murder Conspiracy)

29.  The defendant named below committed the following acts, either one of which alone constitutes racketeering act one:

A.  <u>Conspiracy to Murder Randolph Pizzolo</u>

30.  In or about and between November 2004 and December 1, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally conspired to cause the death of Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.  <u>Murder of Randolph Pizzolo</u>

31.  On or about December 1, 2004, within the Eastern District of New York, the defendant VINCENT BASCIANO, together with others, with intent to cause the death of Randolph Pizzolo, also known as "Randy," caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

## RACKETEERING ACT TWO
(Solicitation to Murder)

32. On or about November 23, 2004, within the Eastern District of New York, the defendant VINCENT BASCIANO knowingly and intentionally solicited, requested, importuned and otherwise attempted to cause another person to cause the death of a federal law enforcement official whose identity is known to the grand jury, with intent that such other person cause the death of the federal law enforcement official in violation of New York Penal Law Section 125.25(1), in violation of New York Penal Law Section 100.10.

## RACKETEERING ACT THREE
(Solicitation to Murder/Murder Conspiracy)

33. The defendants named below committed the following acts, either one of which alone constitutes racketeering act three:

A. <u>Conspiracy to Murder Patrick DeFilippo</u>

34. In or about and between August 2003 and November 19, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO and THOMAS J. LEE, together with others, knowingly and intentionally conspired to cause the death of Patrick DeFilippo, also known as "Patty from the Bronx," in violation of New York Penal Law Sections 125.25(1) and 105.15.

11

B.  <u>Solicitation to Murder Patrick DeFilippo</u>

35.  In or about and between August 2003 and November 19, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO and THOMAS J. LEE, together with others, knowingly and intentionally solicited, requested, importuned and otherwise attempted to cause another person to cause the death of Patrick DeFilippo, also known as "Patty from the Bronx," with intent that such other person cause the death of Patrick DeFilippo in violation of New York Penal Law Section 125.25(1), in violation of New York Penal Law Sections 100.10 and 20.00.

RACKETEERING ACT FOUR
(Obstruction of Justice)

36.  In or about and between November 2004 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant THOMAS J. LEE, together with others, knowingly, intentionally and corruptly endeavored to influence, obstruct and impede the due administration of justice in a criminal case pending in the United States District Court for the Eastern District of New York, to wit: <u>United States v. Joseph Massino</u>, 03 CR 929 (NGG), by providing information to Massino regarding the ongoing criminal affairs of the Bonanno family and making false and misleading statements to the Court regarding the nature of his

relationship with Massino, in violation of Title 18, United States Code, Sections 1503 and 2.

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

## COUNT TWO
(Racketeering Conspiracy)

37. The allegations contained in paragraphs 1 through 26 are hereby realleged and incorporated as if fully set forth in this paragraph.

38. In or about and between January 2003 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant THOMAS J. LEE, also known as "Tommy Lee," together with others, being a person employed by and associated with the Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

39. The pattern of racketeering activity through which the above-named defendant, together with others, agreed to conduct the affairs of the enterprise consisted of the acts set forth in paragraphs 33 through 36 of Count One, as Racketeering

Acts 3 and 4, which are realleged and incorporated as if fully set forth herein. The defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Commit Murder in Aid of Racketeering)

40. The allegations contained in paragraphs 1 through 26 are realleged and incorporated as if fully set forth in this paragraph.

41. The Bonanno family enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, extortion and gambling, in violation of New York State Penal Law, acts indictable under Title 18, United States Code, Sections 892, 893 and 894 (the making, financing, and collecting of extortionate extensions of credit), acts indictable under Title 18, United States Code, Section 1951 (extortion), acts indictable under Title 18, United States Code, Section 1955 (gambling), and acts involving narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

42. In or about and between November 2004 and December 1, 2004, both dates being approximate and inclusive, within the

14

Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," DOMINICK CICALE and ANTHONY AIELLO, also known as "Ace," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno Family, an enterprise engaged in racketeering activity, knowingly and intentionally conspired to murder Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 105.15.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

## COUNT FOUR
(Murder in Aid of Racketeering)

43. The allegations contained in paragraphs 1 through 26 and 41 are realleged and incorporated as if fully set forth in this paragraph.

44. On or about December 1, 2004, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," DOMINICK CICALE and ANTHONY AIELLO, also known as "Ace," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonnano Family, an enterprise engaged in racketeering activity, knowingly and

intentionally murdered Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 20.00.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

## COUNT FIVE
(Using, Carrying and Possessing a Firearm)

45. The allegations contained in paragraphs 1 through 26 are realleged and incorporated as if fully set forth in this paragraph.

46. On or about December 1, 2004, within the Eastern District of New York, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," DOMINICK CICALE and ANTHONY AIELLO, also known as "Ace," together with others, knowingly and intentionally used and carried a firearm during and in relation to a crime of violence, to wit: the crimes charged in Counts Three and Four, and knowingly and intentionally possessed such firearm, which firearm was discharged in furtherance of such crimes of violence.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii), 2 and 3551 et seq.)

## COUNT SIX
(Conspiracy to Commit Murder in Aid of Racketeering)

47. The allegations contained in paragraphs 1 through 26 and 41 are realleged and incorporated as if fully set forth in this paragraph.

48.  In or about and between August 2003 and November 19, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," and THOMAS J. LEE, also known as "Tommy Lee," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno Family, an enterprise engaged in racketeering activity, knowingly and intentionally conspired to murder Patrick DeFilippo, also known as "Patty from the Bronx," in violation of New York Penal Law Sections 125.25(1) and 105.15.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

## COUNT SEVEN
(Obstruction of Justice)

49.  The allegations contained in paragraphs 1 through 26 are realleged and incorporated as if fully set forth in this paragraph.

50.  In or about and between November 2004 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant THOMAS J. LEE, also known as "Tommy Lee," together with others, knowingly, intentionally and corruptly endeavored to influence, obstruct and impede the due administration of justice in a criminal case pending in the United States District Court for the

Eastern District of New York, to wit: <u>United States v. Joseph Massino</u>, 03 CR 929 (NGG), by providing information to Massino regarding the ongoing criminal affairs of the Bonanno family and making false and misleading statements to the Court regarding the nature of his relationship with Massino.

(Title 18, United States Code, Sections 1503, 2 and 3551 <u>et</u> <u>seq</u>.)

A TRUE BILL

_____
FOREPERSON

_____
ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BMR:TJS
F. #2005R00060

No. CR __05-0060 (S-2)(NGG)__

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

# THE UNITED STATES OF AMERICA

vs.

VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," Dominick Cicale, Anthony Aiello, also known as "Ace," and Thomas J. Lee, also known as "Tommy Lee,"

Defendants.

# SUPERSEDING INFORMATION

(Title 18, United States Code, Sections 924 (c) (1) (A) (iii), 1503, 1959 (a) (1), 1959 (a) (5), 1962 (c), 1962 (d), 1963, 2 and 3551 et seq.)

*A true bill.*

_____
*Foreman*

*Filed in open court this* _____ *day;*

*of* _____ *A.D. 19* _____

_____
*Clerk*

*Bail, $* _____

THOMAS SIEGEL, AUSA (718) 254-6339