1

1   UNITED STATES DISTRICT COURT.

2   EASTERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - X

4   UNITED STATES OF AMERICA,   :
                                          CR 03-929/05-060
5
              -against-                   United States Courthouse
6
                                 :        Brooklyn, New York
7
    VINCENT BASCIANO
8   MICHAEL MANCUSO
    ANTHONY INDELICATO
9   ANTHONY DONATO
    ANTHONY AIELLO
10  VINCENZO MASI

11            Defendants.
                                 :        March 30, 2007
12                                        9:30 o'clock a.m.
    - - - - - - - - - - - - - - X
13
    TRANSCRIPT OF STATUS CONFERENCE
14  BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
    UNITED STATES DISTRICT JUDGE
15
    UNITED STATES ATTORNEYS OFFICE
16  GREG ANDRES
    THOMAS SEIGEL
17  JOHN BURETTA
    WINSTON CHAN
18  Assistant United States Attorneys
    271 Cadman Plaza East
19  Brooklyn, New York 11201

20  ATTORNEY FOR DEFENDANT:
    JAMES KOUSOUROS, ESQ.
21  EPHRAIM SAVITT, ESQ.
    For: Basciano
22
    DAVID SCHOEN, ESQ.
23  DAVID LEWIS, ESQ.
    JOHN MITCHELL, ESQ.
24  For: Mancuso

25

1    RICHARD REEVE, ESQ.
       MICHAEL SHEEHAN, ESQ.
2    For:  Indelicato

3    MAURICE SERCARZ, ESQ.
       MITCHELL DINNERSTEIN, ESQ.
4    For: Donato

5    SUSAN KELMAN, ESQ.
       LEE GINSBERG, ESQ.
6    For:  Aiello

7    OLIVER STORCH, ESQ.
       For: Masi

8

9

    Court Reporter:
10   Marsha Diamond
      225 Cadman Plaza East
11  Brooklyn, New York
      TEL: (718) 613-2489
12  FAX: (718) 613-2369

13     Proceedings recorded by mechanical stenography,
    transcript produced by CAT.
14         THE CLERK:  United States versus Basciano, et al.

15  Docket No. 03929/05-060.

16         For the government?

17         MR. BURETTA: John Buretta, for the government.

18         MR. SAVITT: Ephraim Savitt, for Mr. Basciano who is

19  present.

20         THE COURT:  Good morning.

21         MR. SAVITT: Mr. Kousouros is engaged in trial and he

22  has asked me to convey his regards, Your Honor.

23         MS. CARVLIN: Stephanie Carvlin.

24         THE COURT:  Mr. Mancuso.

25         MR. MITCHELL: John Mitchell, Your Honor, good

1    morning.

2          THE COURT:  Good morning, Mr. Mancuso, how are you,

3    sir?

4          DEFENDANT MANCUSO:  Good morning.

5          THE COURT:  And for Mr. Indelicato?

6          MR. REEVE: Richard Reeve, Your Honor.

7          THE COURT:  Good morning.

8          MR. REEVE : Good morning.

9          THE COURT:  Good morning, sir. And for Mr. Donato?

10         MR. SERCARZ: Maurice Sercarz and

11   Mitchell Dinnerstein.

12         DEFENDANT DONATO: Good morning, Judge.

13         THE COURT: For Anthony Aiello?

14         MR. GINSBERG: Lee Ginsberg, good morning.

15   Ms. Kellman was here before.  She may have had to go somewhere

16   else.

17         THE CLERK: She's with Judge Dearie.

18         MR. GINSBERG:  I think she is with another judge.

19         THE COURT:  And for Mr. Masi?

20         Mr. Masi, good morning.

21         DEFENDANT MASI:  Good morning.

22         MR. STORCH:  Oliver Storch.

23         THE COURT: Good morning, Mr. Storch.

24         MR. BURETTA:  We are on for a status.  As we had

25   discussed last time, we were hopeful that we would have a

1  decision by the Attorney General regarding the death penalty,

2  the five death eligible defendants.

3              THE COURT:  No decision?

4              MR. BURETTA:  We have not heard.

5              THE COURT:  What is going on down there?

6              MR. BURETTA:  They seem a little bit busy.

7              THE COURT: That having been said, I still need a

8  decision.

9              MR. BURETTA:  We want a decision, too.

10             THE COURT:  The executive branch has to continue.

11             MR. BURETTA:  Absolutely. In addition, the polygraph

12 for the defendant Basciano just occurred yesterday and I

13 assume defense counsel will want to transmit that to the death

14 penalty committee in Washington.  That had been their desire.

15 So, since it just happened yesterday, I don't think they

16 actually have the results back yet, but we will ask,

17 obviously, that they transmit those as soon as possible, since

18 they do want them included in the analysis of whether to seek

19 the death penalty against their client.

20             MR. SAVITT:  Which we will,  Your Honor, yes, sir.

21 The polygraph examination took place yesterday in the morning.

22             (Susan Kellman, Esq. now present in the courtroom)

23             And according to our polygraph expert, who will

24 administer the test, we should have some results this

25 afternoon, and as soon as we find out, the Court will find

1   out, the government will find out, and we will transmit.

2           THE COURT:  And the committee will find out.

3           Do you plan to provide the information to all of

4   those entities irrespective of the outcome?

5           MR. SAVITT: It would behoove us to do so because if

6   you don't hear from us I think certain negative inferences

7   might be drawn from our silence, even if it is a criminal

8   case.

9           THE COURT:  I was just curious, but I think it ought

10  to be done very promptly.  Let's get this resolved so that --

11  and let me ask this.  Does the committee in Washington know

12  that the test has been conducted or was to be conducted

13  yesterday?

14          MR. SAVITT: They know that it was to be conducted. I

15  don't know about the timing.  Perhaps Mr. Buretta knows.

16          MR. BURETTA:  I believe they are aware of that.

17          THE COURT:  Okay. So if the committee receives the

18  results at the beginning of next week, for instance, do you

19  have a sense of how much longer it will take?  Does this

20  restart the process in Washington?

21          MR. BURETTA:  No, Judge.  It does not restart it.

22          THE COURT:  And so, you have the sense of when we

23  will know -- have an answer, all other things being equal?

24          MR. BURETTA:  Yes, the committee had indicated to

25  both defense counsel and the government at the meeting that

1    they would act expeditiously.  They understood Basciano's

2    desire to have the polygraph results before them before a

3    decision was made by the Attorney General. They did indicate

4    that it would be before, and indeed, they had hoped quite a

5    bit before the impending trial date, which is in mid April.

6    So one suggestion would be we hold a status in two weeks, and

7    we keep, you know, Washington apprised, and we will do that,

8    that we have another status in two weeks.  We need to know and

9    we have a trial date.

10             THE COURT:  Well, I'm go to ask you to convey to the

11   Attorney General's Office with respect that we have five

12   defendants who are death eligible and one who is not, and I

13   need to be able to make plans for all six of those people, and

14   as to those who are not certified, move them along to trial,

15   either with me or with another judge, and I have other judges

16   who have volunteered to conduct trials -- not death penalty

17   trials.  No one has volunteered to conduct any of my death

18   penalty trials, if I have them.  I have one coming up, for

19   sure, but other trials which are not death penalty trials,

20   there will be other judges who are willing to conduct those

21   trials, and so, I can move those cases along with greater

22   speed if we need to have separate trials for various

23   defendants. So I just tell you that.

24             So how about the 13th of April at 11: 00 a.m. for

25   status conference?

1              MR. BURETTA:  Fine.

2              MR. SAVITT : Fine, Your Honor.

3              THE COURT:  For conference on this case, and please

4   inform the Attorney General that I respectfully request that

5   we have a decision from the Attorney General by that date.

6              MR. BURETTA:  We will do that.

7              THE COURT:  I mean it is really important that we

8   get answers, is what I'm saying, for the defendants and for

9   everybody concerned. Having just lived through a death penalty

10  trial which resulted in the death penalty, I don't think

11  there's anything more serious that anybody does in the

12  judicial system than dealing with this and I think we ought to

13  get as much resolution as we can as quickly as we can in order

14  to do justice.  So we have other issues. We have an issue --

15  do we have an issue?

16             MR. BURETTA:  The government's received two letters

17  regarding the government's proposed order regarding

18  communications with the press. The Court had issued an order

19  for us to respond within ten days to the first letter.

20  However, we received a second letter yesterday from counsel

21  for Basciano and we would request until April 9th to respond

22  to both letters.

23             THE COURT:  The letter you received yesterday from

24  Mr. Basciano's counsel was about the limitations of

25  conversation with the press.

1          MS. KELLMAN:  Yes, Your Honor.

2          MR. BURETTA:  Correct.

3          THE COURT:  I don't think I have that letter. Hold

4    on.

5          MS. CARVLIN:   We sent you a courtesy copy.

6          THE COURT: I'm sure you did, but you know  -- oh,

7    yes.  Yes, I have it.  I will look at it carefully. I will

8    give you the additional time.

9          MR. BURETTA:  Thank you.

10         THE COURT: Let me just say this. I have reviewed

11   rule -- local criminal rule 23.1, and I think it has a fair

12   set of guidelines in the rule as to what is a fair matter for

13   discussion and what is an appropriate matter for discussion

14   with the press or anyone else who is not a party to the

15   litigation, and generally speaking, I'm disinclined to order

16   people to do things that the local rules require them to do

17   because they know the local rules require them to do them. On

18   the other hand, the timing of when some of these rules become

19   effective, such as local rule 231(c), which discusses the way

20   people should be -- counsel should behave during the trial of

21   a criminal matter, including the period of selection of the

22   jury, that subsection may be appropriate to apply beginning

23   immediately in a case which is death eligible in as much as

24   it's so difficult to pick a fair and impartial jury for a

25   death penalty case, in any event. So I just point out that,

1  perhaps, you should address timing in your submission as well

2  as everything else, but I think these rules are fair and

3  balanced, and I would prefer if I didn't have to order anyone

4  to do anything, frankly, and I let you follow the rules, and

5  then, if we had a problem, address the problem, but you let me

6  know why it is you think you need something more structured at

7  this point.  Okay.

8          MR. BURETTA:  On that score, Judge, our request

9  would be that we start to apply Subsection C now, and if

10  counsel were willing to agree with that, and that is fine, and

11  eliminate the need for an order, but our concern is precisely

12  that when you have the matter before the Attorney General and

13  the death penalty committee and there are extra judicial

14  comments being made about presentations or the names of people

15  administering polygraphs, etcetera, that aren't raised in

16  court or in a submission to the Court, that concerns us, and

17  so I don't know what defense counsel's position would be about

18  that.

19          THE COURT:  Well, I just raise it and if anyone

20  would like to submit some comments on that particular issue,

21  I'd be glad to hear them.  There's a lot in some of these

22  letters about constitutional limitations and constitutional

23  rights, and I don't know how productive it would be to

24  litigate that. Certainly, you have a right to litigate

25  anything you think is appropriate to litigate with me, and

1  with the appellate courts, if you think that's worthwhile, but

2  I'm just trying to afford the defendants a fair trial, and

3  avoid trying the case in the press in a situation where we may

4  have a death penalty trial here. So you will make your

5  submission and if anyone else wants to submit anything on or

6  about April 9th, feel free to do so. I think you have an

7  understanding of my preference at this point as opposed to

8  instructions at this point.

9          MS. CARVLIN:   Yes, Your Honor.

10         THE COURT:  Do we have anything else for today?

11         MR. BURETTA:  Not from the government.

12         THE COURT:  All right.  Is there any objection to

13  the exclusion of time until April 19, 2007?

14         MR. STORCH:  Thirteenth.

15         MR. SERCARZ:  Thirteenth. None, Your Honor.

16         THE COURT:  All right.  Time is excluded between

17  today and April 13, 2007 in the interest of justice under the

18  Speedy Trial Act, inasmuch as this case has been designated

19  complex and also, for providing of additional information to

20  the Court on the issues that are open, and hopefully, we will

21  be able to move forward with some structure on April 13th with

22  the cooperation of the Justice Department in Washington.

23         All right. Thank you, very much. We are adjourned.

24         Those who celebrate, have a good holiday.

25         (Proceedings adjourned as above set forth)

1      *   *   *   *   *   *   *   *
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25